Sale Agreement

# RETAIL INSTALLMENT LOAN PURCHASE AGREEMENT

BY AND AMONG

SUPERIOR FEDERAL BANK FSB

AND

AMERISTAR FINANCIAL SERVICING COMPANY, LLC

# TABLE OF CONTENTS

## Article I
## Definitions


1.1. Advances ....1
1.2. Agreement ....1
1.3. Bid Amount ....1
1.4. Bid Award Date ....1
1.5. Bid Confirmation Letter ....1
1.6. Bid Form ....1
1.7. Bid Package ....1
1.8. Bid Percentage ....2
1.9. Bill of Sale ....2
1.10. Book Value ....2
1.11. Borrower ....2
1.12. Business Day ....2
1.13. Calculation Date ....2
1.14. Certificate of Title ....2
1.15. Closing ....2
1.16. Closing Date ....2
1.17. Contract Files ....2
1.18. Collateral Document ....2
1.19. Deficiency Balance ....3
1.20. Earnest Money Deposit ....3
1.21. Loan(s) ....3
1.22. Loan Pool(s) ....3
1.23. Loan Pool Combination ....3
1.24. Non-Performing Loan(s) ....3
1.25. Note ....3
1.26. Participated Loan ....3
1.27. Performing Loan ....3
1.28. Property ....4
1.29. Purchase Price ....4
1.30. Repurchase Percentage ....4
1.31. Repurchase Price ....4
1.32. Schedule of Loans ....4
1.33. Settlement Date ....4

Article II
Purchase and Sale of Retail Installment Loans

2.1. Terms and Conditions of Sale....4
2.2. Closing and Payment of Purchase Price....4
2.3. Adjustments to Purchase Price....5
2.4. Rebates and Refunds....5
2.5. Interest Conveyed....5
2.6. Retained Claims and Release....5

Article III
Transfer of Loan(s) and Loan Documents

3.1. Delivery of Documents....6
3.2. Interim Servicing....7

Article IV
Representation and Warranties of Buyer

4.1. Buyer's Authorization....8
4.2. Compliance with Law....8
4.3. Execution and Enforceability....8
4.4. Representations Remain True....8

Article V
Covenants, Duties and Obligations of Buyer

5.1. Servicing of Loans....9
5.2. Collection Agency/Contingency Fee Agreements....9
5.3. Buyer's Due Diligence....9
5.4. Reporting to or for the Internal Revenue Service....9
5.5. Loans in Litigation....10
5.6. Loans in Bankruptcy....10
5.7. Loans in which Seller was the Lead Lender in a Participated Loan....10
5.8. Files and Records....10
5.9. Reimbursement for Use of Seller's Employees....11
5.10. Notice to Borrowers....11
5.11. Notice of Claim....12
5.12. Intervening or Missing Assignments....12
5.13. Prior Servicer Information....12
5.14. Release of Seller....12
5.15. Recordation of Documents....12
5.16. Buyer as Borrower....12

## Article VI
## Loans Sold "As Is" and Without Recourse


6.1. Loans Sold "As Is" .....13
6.2 No Warranties or Representations with Regard to Due Diligence Data .....13
6.3. Buyer's Waiver of Cause of Action .....13


## Article VII
## Repurchase by Seller at Buyer's Option


7.1. Repurchases at Buyer's Option .....13
7.2. Defects not Qualifying for Repurchase .....14
7.3. Notice to Seller .....14
7.4. Re-delivery of Note(s), Files and Documents .....14
7.5. Waiver of Buyer's Repurchase Option .....15


## Article VIII
## Notices


8.1. Notices .....15
8.2. Article VII Notice .....16
8.3. All Other Notices .....16


## Article IX
## Forfeiture of Earnest Money and Other Remedies


9.1. Failure to Close .....16


## Article X
## Miscellaneous Provisions


10.1. Severability .....17
10.2. Construction .....17
10.3. Survival .....17
10.4. Governing Law .....17
10.5. Incorporation by Reference .....17
10.6. Cost, Fees and Expenses .....17
10.7. Nonwaiver, Amendment and Assignment .....18
10.8. Drafting Presumption .....18
10.9. Venue .....18
10.10. Waiver of Jury Trial .....18

Attachments

Attachment "A" -- Schedule of Loans
Attachment "B" -- Repurchase Percentages
Attachment "C" -- Bill of Sale
Attachment "D" -- Assignment and Assumption Agreement
Attachment "E" -- Assignment and Lost Instrument Affidavit
Attachment "F" -- Affidavit and Assignment of Claim
Attachment "G" -- Limited Power of Attorney

# RETAIL INSTALLMENT LOAN PURCHASE AGREEMENT

## LOAN POOL NUMBER[S]: 450SB

THIS AGREEMENT, entered into this 27th day of November, 2001, by and between Superior Federal Bank FSB ("Seller") and Ameristar Financial Servicing Company, LLC ("Buyer") sets forth the terms and conditions whereby Seller agrees to sell and Buyer agrees to purchase all those Loans set forth in the attached Schedule of Loans for the consideration herein stated.

NOW THEREFORE, the Seller and the Buyer agree and represent as follows:

### Article I
### Definitions

For purposes of this Agreement the following terms shall have the meanings indicated:

1.1. **"Advances"** means the total sums paid by Seller prior to Calculation Date, plus the total sums paid after Calculation Date with Buyer's approval to protect Seller's lien interest and any other charges paid by Seller to maintain its security for the Loan.

1.2. **"Agreement"** means this Retail Installment Loan Purchase Agreement and the Attachments hereto.

1.3. **"Bid Amount"** means an amount equal to (i) the sum of the Book Value for all Loans in the Loan Pool or Loan Pool Combination, multiplied by (ii) the Bid Percentage.

1.4. **"Bid Award Date"** means the date the Bid Confirmation Letter is sent to Buyer by Seller.

1.5. **"Bid Confirmation Letter"** means the letter sent to Buyer by Seller confirming acceptance of a Bid submitted by Buyer.

1.6. **"Bid Form"** means the form on which Buyer submitted its bid to Seller to purchase the Loan(s).

1.7. **"Bid Package"** means the following documents that were provided to bidders and potential bidders for the sale of the Loans: (i) Invitation to Bid, (ii) Bid Instructions, (iii) Bid Forms and Instructions, (iv) Certificate of Non-Collusion, (v) Confidentiality Agreement, (vi) Purchaser Eligibility Certification, and (vii) this Agreement with all attachments, as the same may be modified, amended, revised or supplemented from time to time.

1.8. **"Bid Percentage"** means the Buyer's offer to purchase, expressed as a percentage of Book Value, as indicated on the Bid Form for a Loan Pool or Loan Pool Combination.

1.9. **"Bill of Sale"** means the document executed by an authorized representative of Seller, by which Seller sells, assigns and conveys to Buyer all rights, title and interests of Seller in the Loans, that are the subject of this Agreement in the form of Attachment "C."

1.10. **"Book Value"** for all Loans, except those with pre-computed interest, means the unpaid principal balance as stated on the accounting records of Superior Federal Bank FSB as of the Calculation Date and adjusted for payments of principal received by Seller prior to the Calculation Date. Book Value for pre-computed interest Loans shall be increased by the amount of earned and unearned interest accrued prior to the Calculation Date.

1.11. **"Borrower"** means any obligor, guarantor or surety of any Loan or any other party liable for the performance of obligations associated with any Loan.

1.12. **"Business Day"** means any day other than a Saturday, Sunday or federal legal holiday.

1.13. **"Calculation Date"** will be the start of business of the Seller on **November 8, 2001.** This date shall be used to calculate the Purchase Price.

1.14. **"Certificate of Title"** means the document issued by a jurisdiction that evidences the owner(s) and lienholder(s), if any, of a motor vehicle registered in such jurisdiction.

1.15. **"Closing"** means the simultaneous delivery by Seller and Buyer of documents and funds and the performance of the acts herein provided to be performed at the Closing.

1.16. **"Closing Date"** means a date selected by Seller, which date shall be on or before **November 30, 2001.**

1.17. **"Contract File(s)"** means an electronic image or data of Seller's documents pertaining to any Loan that are in the possession of the Seller excluding the Note, Certificate of Title and any renewals of the Note and Collateral Documents.

1.18. **"Collateral Document"** means each Certificate of Title, security agreement, assignment of security interest, personal guaranty, or other agreement or document, whether an original or copy or whether similar to or different from those enumerated, securing the performance or payment of any Loan.

1.19. **"Deficiency Balance"** means the remaining unpaid principal balance of any Loan purchased hereunder after crediting the proceeds of any sale or auction of any Property or the collection of any insurance loss proceeds by the Seller prior to the Calculation Date.

1.20. **"Earnest Money Deposit"** means the monies paid by Buyer to Seller prior to Closing in the amount and manner specified in the Bid Instructions contained in the Bid Package.

1.21. **"Loan(s)"** means and includes: (i) any Note or other evidence of indebtedness renewed by a Note evidencing a Borrower's obligation to pay the indebtedness provided for therein and evidencing a security interest in the related motor vehicle; (ii) all rights, powers, liens or security interests of the Seller in or under the Collateral Document(s); (iii) any judgment founded upon a Note to the extent attributable thereto and any lien arising therefrom; and (iv) any collateral repossessed prior to or after the Calculation Date.

1.22. **"Loan Pool(s)"** means one (or more) of the groups of Loans identified in the Schedule of Loans set forth in Attachment "A" to this Agreement.

1.23. **"Loan Pool Combination"** means a combined group of Loan Pools for which Buyer submitted one unified bid on the Bid Form pursuant to the procedures established in the Bid Instructions.

1.24. **"Non-Performing Loan(s)"** means any Loan other than a Performing Loan.

1.25. **"Note"** means each retail installment sales contract, installment loan note and security agreement, promissory note or other evidence of indebtedness evidencing each loan.

1.26. **"Participated Loan"** means any Loan subject to a shared credit, participation or similar inter-creditor agreement under which the Seller was lead or agent financial depository institution or otherwise managed the credit or sold participations, or under which the Seller was a participating financial depository institution or purchased participations in a credit managed by another.

1.27. **"Performing Loan"** means any Loan for which the last payment of principal, interest and any escrow amounts that is required to be paid by the terms of the Note or Collateral Documents is less than sixty days past due prior to the Calculation Date regardless whether such Loan is in a Loan Pool consisting primarily of Performing Loans or consisting primarily of Non-Performing Loans.

1.28. **"Property"** means the personal property securing any Loan contained in a Loan Pool.

1.29. **"Purchase Price"** means, an amount equal to the sum of (i) the Bid Amount, plus (ii) any Advances made by Seller after Calculation Date, which advances have been approved by Buyer, plus (iii) with respect to Performing Loans only, interest from the borrower's last interest paid through date as of Calculation Date to the Closing Date. No amount with respect to unpaid interest shall be due for Non-Performing Loans.

1.30. **"Repurchase Percentage"** means the Repurchase Percentage indicated on Attachment "B" to this Agreement.

1.31. **"Repurchase Price"** means, with respect to any Loan, an amount equal to the sum of (i) the Bid Amount for the Loan Pool or Loan Pool Combination containing such Loan, multiplied by (ii) the Repurchase Percentage, plus (iii) any Advances made and interest on such Loan included in the Purchase Price, minus (iv) the total of amounts received on or after the Calculation Date by Buyer for such Loan, regardless of how applied, plus (v) Advances made by Buyer on such Loan.

1.32. **"Schedule of Loans"** means the list of all Loans that are the subject of this transaction appended to this Agreement as Attachment "A."

1.33. **"Settlement Date"** means a date determined by Seller upon which final adjustments will be made to the Purchase Price pursuant to Section 2.3 of this Agreement. Any Settlement Date determined by Seller shall be a Business Day not later than ninety (90) calendar days after the Closing Date.

## Article II
## Purchase and Sale of Retail Installment Loans

2.1. **Terms and Conditions of Sale.** Seller agrees to sell, assign, transfer and convey to Buyer, on the terms and conditions set forth in this Agreement, all the right, title and interest of Seller, as of the Closing Date, in and to each Loan in the Loan Pool(s).

2.2. **Closing and Payment of Purchase Price.** The Closing shall, at the Seller's option, be by mail, facsimile or conducted in person at a place designated by the Seller. Buyer shall pay to Seller at the Closing, by cashier's check or wire transfer, the amount of the Purchase Price less the Earnest Money Deposit previously paid by the Buyer. All Loan payments received by Seller before the Calculation Date shall belong to Seller. All Loan payments received by Seller on or after the Calculation Date shall belong to Buyer. In the event that a check Seller has received in payment of a Loan is dishonored before or after the Calculation Date, an adjustment to the Purchase Price in Seller's favor in the amount of the dishonored check shall be made within ten (10) days

of notification by the Seller to the Buyer that a check has been dishonored. In the event Seller deposits a check received on or after the Calculation Date and issues a check or other payment therefor to Buyer, Buyer shall bear the risk that any such check will be dishonored and Buyer shall reimburse Seller within ten (10) Business Days after receipt of notice by Seller to Buyer of the same.

2.3. **Adjustments to Purchase Price.** Upon the Settlement Date, the Purchase Price will be adjusted to reflect any changes in the Book Value because of miscalculations, misapplied payments, unapplied payments, or other accounting errors that have been discovered from the Calculation Date through the Settlement Date. Any money due Buyer or Seller will be calculated using the Bid Percentage and paid within ten (10) Business Days after the Settlement Date.

2.4. **Rebates and Refunds.** The Buyer is not entitled to any rebates or refunds from the Seller from any pre-computed interest Loan regardless of when the Note matures. Further, on pre-computed interest Loans, the Seller will not refund any unearned discount amounts to Buyer.

2.5. **Interest Conveyed.** Seller shall convey all of its right, title and interest in and to each Loan, including all of Seller's right, title and interest in and to any Deficiency Balance resulting from a sale or auction of any Property by Seller or any of its predecessors-in-interest prior to the Calculation Date. In the event of a sale or auction of any Property on or after the Calculation Date, Seller shall convey to Buyer the Deficiency Balance together with the net proceeds, if any, of such sale or auction of any Property or the collection of any insurance loss proceeds.

2.6. **Retained Claims and Release.** Buyer and Seller agree that the sale of the Loans pursuant to this Agreement will exclude the transfer to Buyer of all right, title and interest of Seller in and to any and all claims of any nature whatsoever that might now exist or hereafter arise, whether known or unknown, that Seller has or might have (a) against officers, directors, employees, insiders, accountants, attorneys, other persons employed by Seller or any of its predecessors, underwriters or any other similar persons who have caused a loss to Seller or any of its predecessors in connection with the initiation, origination or administration of a Loan, (b) against any appraisers, accountants, auditors, attorneys, investment bankers or brokers, Loan brokers, deposit brokers, securities dealers or other professional individuals or entities who performed services for Seller relative to a Loan, or (c) against any third parties involved in any alleged fraud or other misconduct relating to the making or servicing of a Loan.

## Article III
## Transfer of Loan(s) and Loan Documents

3.1. **Delivery of Documents.** Buyer and Seller agree to execute and deliver to one another the following files and documents:

(a) At Closing, Buyer shall deliver to Seller:

1. An Assignment and Assumption Agreement executed by Buyer, in the form of Attachment "D" to this Agreement.

2. A corporate resolution certified by Buyer's corporate secretary or, if Buyer is not a corporation, other evidence satisfactory to Seller as to Buyer's authority: (i) to purchase the Loans, and (ii) to execute and deliver this Agreement and all related instruments required to consummate the transactions contemplated hereby and to carry out all of its obligations hereunder (including a certificate of incumbency of any person who executes any document on behalf of Buyer).

3. Other documents as Seller may reasonably require as evidence of Buyer's good standing, existence or authority.

4. Two copies of this Agreement signed by Buyer.

(b) At Closing, Seller shall deliver to Buyer:

1. A Bill of Sale executed by Seller transferring all of Seller's right, title and interest in and to the Loans to Buyer.

2. An Assignment and Assumption Agreement conveying the Loans purchased by Buyer hereunder.

3. The Contract Files, Certificate(s) of Title, Note and any additional documents required by applicable law (including assignments of UCC financing statement and continuation statement) to transfer and assign to Buyer the right, title and interest of Seller in and to the Loans and Collateral Documents. Provided, however, that (a) Buyer shall prepare and furnish to Seller all such documents in appropriate form suitable for filing or recording (if applicable); (b) Buyer shall be solely responsible for the preparation, content and form of such documents; (c) Buyer hereby releases Seller from any loss or damage incurred by Buyer due to the content and form of such documents and shall indemnify and hold Seller harmless for any action or cause of action by any person arising out the content and form of any such documents; and (d) if any such documents are unacceptable to Seller for any reason whatsoever,

Seller may return it to Buyer along with an explanation as to why the document(s) is unacceptable to Seller. When requesting execution of any such document, Buyer shall furnish Seller with the Loan Pool and the Loan numbers set forth on the Schedule of Loans, a copy of the Collateral Document to be transferred and copies of any previous assignments of the applicable Collateral Document. Nothing contained herein or elsewhere in this Agreement shall require Seller to make any representation or warranty or provide any indemnity in any instrument or otherwise, nor is Seller obligated to obtain any consents or approvals to the sale or transfer of the Loans or the related servicing rights, if any. Seller shall have no obligation to provide, review or execute any such additional documents unless the same shall have been requested of Seller within 365 calendar days of the Closing Date.

4. A Limited Power of Attorney in the form of Attachment "G" within a reasonable period of time after Closing for the purpose of endorsing the Note(s) in the following manner:

Pay to the order of

________________________

Without Recourse

Superior Federal Bank FSB
By:____________________
Title:___________________

3.2 **Interim Servicing**. The Loans will be purchased by the Buyer and sold by the Seller on a servicing-released basis. Seller shall service the Loans on an interim basis for a period not to exceed the earlier to occur of (i) forty-five (45) days following the Closing Date, or (ii) January 31, 2002 in conformance with the standards, practices and procedures used by Seller in servicing the Loans prior to the Closing Date. Seller shall cooperate with Buyer in transferring the servicing to Buyer; provided, however, that all costs and expenses of transferring the servicing shall be borne by Buyer. Buyer shall pay Seller for all reports, tapes, lists, notices, documents or other items required to be provided by Seller in connection with the servicing transfer. Seller may, at its option, transfer and assign its obligations and responsibilities under this Section 3.2 to another party, in which event all references to Seller pursuant to this Section shall be deemed to refer to such assignee.

## Article IV
## Representation and Warranties of Buyer

Buyer hereby represents and warrants to Seller as of the date of this Agreement and as of the Closing Date:

4.1. **Buyer's Authorization.** Buyer and the undersigned are duly authorized representatives of Buyer, acting individually, and represent that Buyer is authorized to enter into this Agreement and that all laws, rules, regulations, charter provisions and bylaws to which Buyer may be subject have been duly complied with, and that such representative is authorized to act upon behalf of and bind Buyer to the terms of this Agreement.

4.2. **Compliance with Law.** Neither the Buyer nor any of its subsidiaries is in violation of any statute, regulation, order, decision, judgment or decree of, or any restriction imposed by, the United States of America, any State, municipality or other political subdivision or any agency of any of the foregoing, or any court or other tribunal having jurisdiction over the Buyer or any of its subsidiaries or any assets of any such person, or any foreign government or agency thereof having such jurisdiction, with respect to the conduct of the business of the Buyer or of its subsidiaries, or the ownership of the properties of the Buyer or any of its subsidiaries, which, either individually or in the aggregate with all other such violations, would materially and adversely affect the business, operations or condition (financial or otherwise) of the Buyer or the ability of the Buyer to perform, satisfy or observe any obligation or condition under this Agreement. Neither the execution and delivery nor the performance by the Buyer of this Agreement will result in any violation by the Buyer of, or be in conflict with, any provision of any applicable law or regulation, or any order, writ or decree of any court or governmental authority.

4.3. **Execution and Enforceability.** This Agreement has been duly executed and delivered by the Buyer and when duly authorized, executed and delivered by the Seller, this Agreement will constitute a legal, valid and binding obligation of the Buyer, enforceable in accordance with its terms.

4.4. **Representations Remain True.** Buyer represents and warrants that all information provided to Seller or its agents by or on behalf of Buyer in connection with this Agreement and the transactions contemplated hereby, including, but not limited to, the Purchaser Eligibility Certification, Certificate of Non-Collusion and Confidentiality Agreement is true and correct in all material respects and does not fail to state any fact required to make the information contained therein not misleading.

Article V
Covenants, Duties and Obligations of Buyer

5.1. **Servicing of Loans.** Buyer shall cause all Loan servicing to be transferred to Buyer or Buyer's servicing contractor, at Buyer's cost and expense, within forty-five (45) days from the Closing Date, but in no event later than January 31, 2002. In the event that Buyer fails to cause servicing to be transferred in accordance with this Section, then Seller, or Seller's assignee, as the case may be, may, upon five (5) business days' prior notice to Buyer, discontinue servicing the Loans, and terminate all servicing activity with respect to the Loans, in which event Seller shall have no further obligation or duty to Buyer with respect to the servicing or transfer of servicing of the Loans. From and after the transfer of servicing to Buyer or Buyer's servicer, or termination of Seller's obligation to service the Loans under this Agreement, Buyer shall comply with all state and federal laws applicable with respect to the ownership and/or servicing of the Loans, including, without limitation, the Fair Debt Collection Practices Act (15 U.S.C. Section 1692 et seq., as amended) and similar state requirements, laws, rules and regulations and shall abide by and be subject to all of the terms and conditions of the Collateral Documents.

5.2. **Collection Agency/Contingency Fee Agreements.** Buyer takes the Loan(s) subject to any agreements with collection agencies currently in force or contingency fee agreements with attorneys and agrees to fulfill all obligations of the Seller thereunder. Buyer hereby indemnifies and agrees to hold Seller harmless from and against any and all claims, demands, losses, damages, penalties, forfeitures or judgments made or rendered against the Seller or any legal fees or other costs, fees or expenses incurred by the Seller arising out of or based upon such agreements with collection agencies or contingency fee agreements with attorneys. Buyer agrees to notify Seller within ten (10) Business Days of notice or knowledge of any such claim or demand.

5.3. **Buyer's Due Diligence.** Buyer represents that it has made an independent evaluation of the Contract Files made available to it pertaining to the Loans being purchased hereunder. Buyer also represents that it has conducted such other investigations as it deems appropriate and as are consistent with the terms of the Confidentiality Agreement executed by Buyer in connection with this transaction, including, without limitation, searches of UCC, title, court, bankruptcy and other public records. Buyer agrees and represents that it is entering into this Agreement solely on the basis of its own investigations and its judgment as to the nature, validity, enforceability, collectibility and value of the Loans and all other facts material to their purchase. Buyer further acknowledges that no employee or representative of the Seller has been authorized to make any statements or representations other than those specifically contained in this Agreement.

5.4. **Reporting to or for the Internal Revenue Service.** Buyer agrees to submit all Internal Revenue Service Forms and Information Returns for all Loans

transferred to Buyer under this Agreement for the full calendar year in which the Closing occurs and thereafter.

5.5. **Loans in Litigation.** With respect to any Loan sold pursuant to this Agreement, which is the subject of any type of pending litigation, Buyer shall notify the Seller's Regional Counsel, 1910 Pacific Avenue, Dallas, Texas 75201, within fifteen (15) Business Days of the Closing of the name of the attorney selected by Buyer to represent Buyer's interests in the litigation. Buyer shall, within fifteen (15) Business Days of the Closing, notify the clerk of the court and all counsel of record that ownership of the Loan was transferred from Seller to Buyer. Buyer shall have its attorney file appropriate pleadings with the court within twenty (20) Business Days of Closing substituting Buyer's attorney for Seller's attorney and also removing Seller as a party to the litigation and substituting Buyer as the real party in interest. Should Buyer fail to comply with the provisions of this Paragraph within twenty (20) Business Days after the date of Closing, Seller may, at its option, dismiss with or without prejudice or withdraw from, any such pending litigation. Buyer agrees to reimburse Seller, upon demand, for Seller's legal expenses in such litigation.

5.6. **Loans in Bankruptcy.** In accordance with Bankruptcy Rule 3001(e), Buyer agrees to take all actions necessary to file within thirty (30) Business Days of Closing, (i) proofs of claims in pending bankruptcy cases involving any Loans purchased for which Seller has not already filed a proof of claim, and (ii) evidence of the terms of the purchase of Loans hereunder with the appropriate bankruptcy court in cases in which Seller has filed proofs of claims. Buyer shall prepare and provide to Seller within thirty (30) Business Days of Closing, an Assignment of Claim and Affidavit in the form attached hereto as Attachment "F" for all Loans purchased, which are in bankruptcy at Closing. Buyer releases Seller from any claim, demand, suit or cause of action Buyer may have as a result of Seller's failure to file any such proofs of claims and Buyer further agrees to reimburse Seller for any cost or expense incurred by Seller as a result of Buyer's failure to file an Assignment of Claim as required herein.

5.7. **Loans in which Seller was the Lead Lender in a Participated Loan.** Buyer hereby agrees to assume the role of lead lender for any Loan in which a portion of the Loan was participated to one or more other entities and in which Seller was the lead lender as of the Closing Date. Buyer hereby agrees to accept any such participated Loan subject to all participants' right, title and interest in such participated Loan, and Buyer hereby agrees to hold Seller harmless for any loss incurred because of Buyer's performance pursuant to this paragraph.

5.8. **Files and Records.** Buyer agrees to abide by all applicable state and federal laws, rules and regulations regarding the handling and maintenance of all documents and records relating to the Loans purchased hereunder including, but not limited to, the length of time such documents and records are to be retained. Buyer further agrees to: