(a) Allow Seller the continuing right to use, inspect and make extracts from or copies of any such documents or records upon Seller's reasonable notice to Buyer.

(b) Allow Seller the possession, custody and use of original documents for any lawful purpose and upon reasonable terms and conditions.

(c) Give reasonable notice to Seller of Buyer's intention to destroy or dispose of any documents or files and to allow the Seller, at its own expense, to recover the same from Buyer.

5.9. **Reimbursement for Use of Seller's Employees.** In the event of litigation with respect to the Loans purchased by Buyer in which Seller or its employees are requested or required by subpoena, court order or otherwise, to perform any acts including, but not limited to, testifying in litigation, preparing responses to subpoenas or other legal process or pleadings, and/or performing any review of public or private records such as tracing funds, whether said litigation is commenced by Buyer or any other party, Seller shall be reimbursed by Buyer for the time expended by each of Seller's employees involved in the performance of said acts at the rate of $50.00 per hour per employee, plus all associated travel, lodging and per diem costs. Seller shall, in its sole and absolute discretion, determine and assign the personnel necessary to perform said acts. Buyer also agrees to reimburse Seller for copies made in the course of performing said acts at the rate of $.25 cents per copy. Nothing in this paragraph shall require Seller to provide Buyer with any information or service in this regard.

5.10. **Notice to Borrowers.** Buyer shall promptly after the Closing Date, but in no event later than thirty (30) calendar days after the Closing Date, at its own cost and expense, give notice of this transfer to all Borrowers or Loan servicers by first class U.S. Mail at their current or last known address of record. Buyer shall be deemed to have complied with its obligation to give notice of the transfer by such mailing. In the event there is no known address for a Borrower, no personal notice to that Borrower shall be necessary. Upon subsequently locating such Borrower, Buyer shall send such notice to such Borrower. Buyer shall be liable to Seller for any and all costs and expenses incurred by Seller as a result of Buyer's failure to comply with the provisions of this paragraph. Such costs and expenses shall include, but not be limited to, salaries of Seller's personnel and other administrative expenses, the time expended by each of Seller's employees involved in the performance of said acts at the rate of $50.00 per hour, per employee, plus all associated travel, lodging and per diem costs. Seller shall, in its sole and absolute discretion, determine and assign the personnel necessary to perform said acts. Buyer also agrees to reimburse Seller for copies made in the course of performing said acts at the rate of $.25 cents per copy. Nothing in this paragraph shall require Seller to provide Buyer with any information or service in this regard.

5.11. **Notice of Claim.** Buyer shall immediately notify Seller of any claim, threatened claim or litigation against Seller arising out of any Loan contained in a Loan Pool or Loan Pool Combination purchased by Buyer that may come to its attention.

5.12. **Intervening or Missing Assignments.** Buyer acknowledges and agrees that Seller shall have no obligation to secure or obtain any missing intervening assignment or any assignment to Seller that is not contained in the Contract File or among the Collateral Documents. Buyer shall have the sole responsibility and expense of securing any intervening assignment or any assignment to Seller that may be missing from the Collateral Documents from the appropriate source.

5.13. **Prior Servicer Information.** Buyer acknowledges and agrees that Seller might not have access to information from prior servicers of a Loan and that Seller has not requested any information not in the possession of Seller or its servicing contractor or from any prior servicer of a Loan. Buyer acknowledges and agrees that Seller will not be required under the terms of this Agreement to request any information from any prior servicer.

5.14. **Release of Seller.** Buyer agrees that it will not renew, extend, renegotiate, compromise, settle or release any Note or Loan or any right of Buyer founded upon or growing out of this Agreement, except upon payment in full thereof, unless all Borrowers on said Note or Loan shall first release and discharge the Seller and its agents and assigns (the "Released Parties") from all claims, demands and causes of action which any such Borrower may have against any such Released Party arising from or growing out of any act or omission occurring prior to the date of such release. If Buyer fails to obtain such release, Buyer agrees to protect, save and hold Seller harmless from any expense or damage the Seller suffers that might have been prevented had Buyer obtained the release.

5.15. **Recordation of Documents.** Buyer shall, at its sole cost and expense deliver all appropriate documents and instruments with respect to each Loan for recordation or filing in the records of the appropriate county, state and/or other jurisdiction(s).

5.16. **Buyer as Borrower.** In the event that Buyer is the Borrower, or is a related party to the Borrower with respect to any Loan in a Loan Pool, then Buyer, on its own behalf and on behalf of any related party controlled by it or under common control with it, agrees that it shall, and hereby does, release and discharge the Seller and its agents, successors and assigns (the "Released Parties") from all claims, demands and causes of action which Buyer or such related party may have against any such Released Party arising from or growing out of any act or omission related to said Loan. Further, Buyer agrees to protect, save and hold the Released Parties harmless from any such claim or cause of action brought by any party controlled by it or under common control with it. Buyer acknowledges and agrees that Article VII of this Agreement shall not apply with respect to any Loan for which Buyer or a related party to Buyer is the Borrower. At buyer's request, and upon preparation of appropriate documentation by Buyer in

conformance with Section 3.1(b)(3) of this Agreement, Seller will release and discharge a Loan for which Buyer is the Borrower in lieu of selling and assigning the same to Buyer.

## Article VI
## Loans Sold "As Is" and Without Recourse

6.1. **Loans Sold "As Is."** **THE LOANS ARE BEING SOLD "AS IS" AND "WITH ALL FAULTS," WITHOUT ANY REPRESENTATION, WARRANTY OR RECOURSE WHATSOEVER AS TO EITHER CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED. SELLER SPECIFICALLY DISCLAIMS ANY WARRANTY, GUARANTY OR REPRESENTATION, ORAL OR WRITTEN, PAST OR PRESENT, EXPRESS OR IMPLIED, CONCERNING THE LOANS, THE STRATIFICATION OR PACKAGING OF THE LOANS, THE COLLATERAL OR THE LOAN DOCUMENTS.**

6.2. **No Warranties or Representations With Regard to Due Diligence Data.** Seller makes no representations or warranties as to the completeness or accuracy of any information provided by Seller with respect to any Loan. Buyer's exclusive remedies with respect to any inaccurate or incomplete information provided by Seller are an adjustment to the Purchase Price in accordance with Section 2.3 or an option to repurchase under Article VII, and such exclusive remedies are available only if all other conditions therefor expressed in this Agreement have been met.

6.3. **Buyers' Waiver of Cause of Action.** Buyer hereby waives any right or cause of action it might now or in the future have against the Seller as a result of its purchase of the Loan Pool(s) subject to this Agreement; provided, however, that this waiver does not include any action taken as a result of Seller's failure to perform under the terms of this Agreement.

## Article VII
## Repurchase by Seller at Buyer's Option

7.1. **Repurchases at Buyer's Option.** The Buyer may, at its option, and upon satisfaction of the procedures and other requirements set forth below, require the Seller to repurchase a Loan, if, and only if, prior to the Closing Date one of the following events set forth below has occurred. IN NO EVENT SHALL THE OCCURRENCE OF ANY SUCH EVENT BE EVIDENCE OF BAD FAITH, MISCONDUCT OR FRAUD EVEN IN THE EVENT THAT IT IS SHOWN THAT SELLER, IN ANY CAPACITY, ANY AGENT OF SELLER, OR ANY OF ITS RESPECTIVE DIRECTORS, EMPLOYEES, OFFICERS OR AGENTS KNEW OR SHOULD HAVE KNOWN OF THE EXISTENCE OF ANY FACTS RELATING TO THE OCCURRENCE OF SUCH EVENT:

(a) The Borrower had been discharged in a no asse proceeding and no collateral exists out of which the Loan may be sat guarantors or sureties of the Note, if any, or the obligations contained similarly been discharged in no asset bankruptcies.

(b) A court of competent jurisdiction had entered a ... (other than a bankruptcy decree) holding that neither the Borrower nor any guarantors or sureties owe an enforceable obligation to pay the holder of the Note or its assignee(s).

(c) The Seller had executed and delivered to the Borrower a release of liability from all obligations under the Note.

(d) The Seller is not the owner of the Loan.

(e) Seller fails to provide either the original or duplicate Certificate of Title (or the functional equivalent thereof for jurisdictions that do not deliver Certificate of Titles to secure lenders) for the motor vehicle that is security for the Loan that is represented as being available on Attachment "A" hereto.

(f) Seller fails to provide Buyer with an electronic image or data of Seller's documents or the original or copy of the Note, judgment or other evidence of indebtedness.

7.2. **Defects not Qualifying for Repurchase.** Neither the absence of any intervening assignment or any assignment to Seller, nor the existence of any lien, claim or encumbrance on the Loan or its Collateral, nor any defect in the lien or priority of Seller's security interest in the Collateral shall give rise to any claim for repurchase under this Section.

7.3. **Notice to Seller.** Buyer shall notify Seller of each Loan with respect to which Buyer seeks repurchase and which notice shall be accompanied by evidence supporting the basis for repurchase of such Loan. Promptly upon request by Seller, Buyer shall supply Seller with any additional evidence that Seller may require. Seller shall have no obligation to repurchase any Loan for which notice and all supporting evidence reasonably required by Seller have not been received by Seller at the addresses specified in Article VIII, Sections 8.2 and 8.3 no later than the first Business Day after the expiration of 180 calendar days after the Closing Date.

7.4. **Re-delivery of Note(s), Files and Documents.** For any Loan that qualifies for repurchase under this Article, Buyer shall: (a) re-endorse and deliver the Note(s) to Seller, (b) reassign all Collateral Documents associated with such Loan, and (c) re-deliver to Seller the Contract File(s), Certificate of Title, Note, judgment or other evidence of indebtedness originally furnished to Buyer, along with any additional records compiled or accumulated by Buyer pertaining to the Loan. The documents evidencing such reconveyance shall be substantially the same as those executed at Closing pursuant

to Article III of this Agreement. In all cases where Buyer recorded or filed among public records any document or instrument evidencing a transfer of the Loan to Buyer, Buyer shall cause to be recorded or filed among such records a similar document or instrument evidencing the reconveyance of the Loan to Seller. Upon compliance by Buyer with the provisions hereof, Seller shall pay to Buyer the Repurchase Price.

7.5. **Waiver of Buyer's Repurchase Option.** Seller will be relieved of its obligation to repurchase any Loan for any reason set forth in 7.1 (a) through (f), above, if Buyer: (a) modifies any of the terms of the Loan (including the terms of any Collateral Document); (b) exercises forbearance with respect to any scheduled payment on the Loan; (c) sells, assigns or transfers the Loan or any interest therein; (d) fails to employ usual and customary care in the maintenance, collection, servicing and preservation of the Loan, including usual and customary delinquency prevention, collection procedures and protection of collateral as warranted; (e) initiates any litigation in connection with the Loan other than litigation to force payment or to realize on the collateral securing the Loan; (f) completes any action with respect to repossession, (g) causes, by action or inaction, the priority of title to the Loan, and other security for the Loan to be less than that conveyed by Seller; (h) causes, by action or inaction, the security for the Loan to be different than that conveyed by Seller, except as may be required by the terms of the Collateral Documents; (i) causes, by action or inaction, a claim of third parties to arise against the Buyer that, as a result of repurchase under this Agreement, might be asserted against Seller; (j) causes, by action or inaction, a security interest, lien, pledge or charge of any nature to encumber the Loan to arise; or (k) fails to cause servicing to be transferred to Buyer or Buyer's servicer in accordance with the terms of Section 5.1 of this Agreement.

## Article VIII
## Notices

8.1. **Notices.** All notices or deliveries required or permitted hereunder shall be in writing and shall be deemed given when personally delivered to the individual hereinafter designated or when actually received by means of Fax, overnight mail or certified mail, return receipt requested, at the following address or such other address as either party may hereafter designate by notice to the other party, making specific reference to this Article VIII of this Agreement.

8.2. **Article VII Notice.** Notice required by Article VII, Section 7.3 (Repurchase by Seller at Buyer's Option) shall be mailed to:

Manager, Asset Claims Administration
FDIC Asset Claims Administration
550 17th Street, NW, Rm. F3030
Washington, D.C. 20429
Facsimile: (202) 898-8916 or (202) 898-8917

Assistant General Counsel
Special Issues Unit
FDIC Legal Division
550 17th Street, NW
Washington, D. C. 20429

8.3. **All Other Notices.** Notice required by any other provision(s) of this Agreement shall be mailed to:

| | |
|---|---|
| BUYER: | Ameristar Financial Servicing Company, LLC<br>1425 Tri State Parkway, Suite 180<br>Gurnee, IL 60031 |
| Attention: | Richard E. Wonderlic |
| Telephone Number: | (847) 855-7032 |
| SELLER: | Superior Federal Bank FSB<br>1910 Pacific Avenue<br>Dallas, Texas 75201 |
| | Regional Counsel<br>FDIC Legal Division<br>1910 Pacific Avenue<br>Dallas, Texas 75201 |

Any notice sent by Fax must be confirmed by submission of an original or hard copy on the next Business Day following such notification.

## Article IX
## Forfeiture of Earnest Money and Other Remedies

9.1. **Failure to Close.** If for any reason, without fault of the Seller, the Buyer fails to consummate a purchase on the Closing Date, upon the terms and conditions set forth in this Agreement, Seller's liquidated damages shall be the Earnest Money Deposit and all other funds deposited with Seller. The Buyer and Seller agree that the failure or refusal of Seller to alter or modify, in any way, the terms or conditions of this Agreement or any other documents contained in the Bid Instructions shall not constitute fault on the part of the Seller. Nothing contained herein is intended to, nor shall it be construed to

limit, in any way the right of the Seller to seek any other right, remedy, relief or damages provided by law or equity. The Buyer shall not be liable for any of the foregoing damages if Buyer is forced to withdraw its bid after award as the result of a supervisory directive given by the Federal Deposit Insurance Corporation or other federal or state financial regulatory agency, provided that the Seller shall be satisfied that such supervisory directive is legally effective. In such event, the Seller shall refund the Earnest Money Deposit and any other funds deposited with Seller.

## Article X
## Miscellaneous Provisions

10.1. **Severability.** Each part of this Agreement is intended to be severable. If any term, covenant, condition or provision hereof is unlawful, invalid or unenforceable for any reason whatsoever, such illegality, invalidity or unenforceability shall not affect the legality, validity or enforceability of the remaining parts of this Agreement and all such remaining parts hereof shall be valid and enforceable and have full force and effect as if the invalid or unenforceable part had not been included.

10.2. **Construction.** Unless the context otherwise requires, singular nouns and pronouns when used herein, shall be deemed to include the plural and vice versa and impersonal pronouns shall be deemed to include the personal pronoun of the appropriate gender.

10.3. **Survival.** Each and every covenant made by Buyer or Seller in this Agreement shall survive the Closing and shall not merge into the closing documents, but instead shall be independently enforceable.

10.4. **Governing Law.** Federal law shall control this Agreement. To the extent that federal law does not supply a rule of decision, this Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without regard to any conflict of law principles. Nothing in this Agreement will require any unlawful action or inaction by either party.

10.5. **Incorporation by Reference.** The Bid Package shall be considered part of this Agreement as if fully set forth herein.

10.6. **Cost, Fees and Expenses.** Except as otherwise provided herein, each party hereto agrees to pay all costs, fees and expenses which it has incurred in connection with or incidental to the matters contained in this Agreement, including without limitation any fees and disbursements to its accountants and counsel; provided that the Buyer shall pay all fees, costs and expenses (other than attorneys' fees incurred by the Seller) incurred in connection with the transfer to it of any Loan hereunder.

10.7. **Nonwaiver, Amendment and Assignment.** No provision of this Agreement may be amended or waived except in writing executed by all of the parties to this Agreement. This Agreement and the terms, covenants, conditions, provisions, obligations, undertakings, rights and benefits hereof, including the Attachments to this Agreement, shall be binding upon, and shall inure to the benefit of the undersigned parties and their respective heirs, executors, administrators, representatives, successors and assigns. Notwithstanding the foregoing, this Agreement may not be transferred or assigned without the express prior written consent of Seller (and any attempted assignment without such consent shall be void).

10.8. **Drafting Presumption.** This Agreement will be construed fairly as to each party regardless of which party drafted it.

10.9. **Venue.** Buyer and Seller each hereby irrevocably and unconditionally agree that any legal action arising under or in connection with the sale, this Agreement or the transactions contemplated hereby are to be instituted in the United States District Court in and for the District of Columbia.

10.10. **Waiver of Jury Trial. Buyer and Seller each hereby irrevocably and unconditionally waive any right to have a jury participate in resolving any dispute, whether sounding in Loan, tort or otherwise, arising out of or relating to or in connection with the sale of the Loans, this Agreement or any transaction contemplated hereby.**

EXECUTED THIS 27th DAY OF November, 2001.

BUYER: Ameristar Financial Servicing Company, LLC

By: ______________________

Name: Richard E. Wonderlic

Title: President

SELLER: Superior Federal Bank FSB

By: ______________________

Name: John A. Soricelli

Title: Vice President

ATTACHMENT A
to
Retail Installment Loan Purchase Agreement

SCHEDULE OF LOANS

Loan Pool Number[s]: 450SB

ATTACHMENT B
to
Retail Installment Loan Purchase Agreement

# REPURCHASE PERCENTAGES

**Loan Pool Number[s]: 450SB**

If applicable, the Repurchase Percentage for each Loan is listed on the individual Schedule of Loans, (see Attachment A).

If applicable, in the event that the Buyer is purchasing a Loan Pool Combination, then the Repurchase Percentage for each Loan in such Loan Pool Combination shall be calculated by Seller and attached to this Agreement at Closing. Such calculation by Seller shall be made by weighting the relative values of each Loan in the Loan Pool Combination based upon Seller's internal valuation methodology.

ATTACHMENT C
to
Retail Installment Loan Purchase Agreement
FORM OF BILL OF SALE

BILL OF SALE

Loan Pool Number[s]: 450SB

For value received and pursuant to the terms and conditions of the Retail Installment Loan Purchase Agreement by and between Superior Federal Bank FSB ("Seller"), and Ameristar Financial Servicing Company, LLC ("Buyer") dated November 27th, 2001 (the "Agreement"), does hereby sell, assign and convey to Buyer, its successors and assigns, all right, title and interest of Seller in and to the Loans described in Exhibit A attached to this Bill of Sale and made a part of this Bill of Sale for all purposes, arising from and after the date hereof.

**THIS BILL OF SALE IS EXECUTED WITHOUT RECOURSE AND WITHOUT REPRESENTATIONS OR WARRANTIES, WHETHER EXPRESS, IMPLIED OR CREATED BY OPERATION OF LAW, EXCEPT AS PROVIDED IN THE AGREEMENT.**

EXECUTED THIS 26th DAY OF November, 2001.

SELLER:
Superior Federal Bank FSB
By: ______________________
Name: John A. Soricelli
Title: Vice President

WITNESS

ACKNOWLEDGEMENT

STATE OF NEW YORK )
SS:
COUNTY OF ROCKLAND )

Before me, the undersigned authority, a Notary Public in and for the county and state aforesaid, on this day personally appeared John A. Soricelli, known to me to be the person whose name is subscribed to the foregoing instrument, as Vice President of Superior Federal Bank FSB, and acknowledged to me that s/he executed the same as the act of Superior Federal Bank FSB, for the purposes and consideration therein expressed, and in the capacity therein stated.

Given under my hand and seal of office on this the 26th day of November, 2001.

Notary Public

JESSICA M. MARQUEZ
Notary Public, State of New York
No. 01MA5050641
Qualified in Rockland County
Certificate Filed in New York County
Commission Expires Oct. 18, 20__

ATTACHMENT D
to
Retail Installment Loan Purchase Agreement

## FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT

## ASSIGNMENT AND ASSUMPTION AGREEMENT
Loan Pool Number[s]: 450SB

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Assignment") is made and entered into as of the 27th day of November, 2001, by and between Superior Federal Bank FSB ("Assignor"), and Ameristar Financial Servicing Company, LLC, a limited liability company organized and existing under the laws of Delaware ("Assignee").

WHEREAS, Assignor and Assignee have entered into that certain Retail Installment Loan Purchase Agreement dated as of November 27, 2001 (the "Agreement"), pursuant to which Assignor has agreed to sell, transfer and assign to Assignee certain loans identified on Attachment A attached to this Assignment (the "Loans").

WHEREAS, pursuant to a Bill of Sale of even date herewith, Assignor has conveyed to Assignee all of Assignor's interest in the Loans.

WHEREAS, Assignor is a party to certain agreements, including the documents evidencing and securing the Loans, Certificate(s) of Title, security agreement(s), assignment(s) of security interest, personal guaranties, loan agreements and other documents or instruments of similar or different natures relating to each Loan (the "Collateral Documents").

WHEREAS Assignor may be a party to certain agreements pursuant to which the Loans that are participations were issued (the "Participation Agreements").

WHEREAS Assignor is a party to various other agreements relating to the Loans, including agreements with attorneys and others relating to collection of the Loans (the "Miscellaneous Agreements"). The term "Miscellaneous Agreements" shall not include any servicing agreements between Seller and independent entities pursuant to which the contractors perform loan servicing functions on behalf of Superior Federal Bank FSB.

WHEREAS as a condition to the sale of the Loans, Assignor has agreed to assign and convey to Assignee all of Assignor's right, title and interest in, to and under the Collateral Documents, the Participation Agreements, if any, and the Miscellaneous Agreements and Assignee has agreed to accept and assume from Assignor all of

Assignor's duties and obligations arising from and after the date hereof under the Collateral Documents, the Participation Agreements and the Miscellaneous Agreements.

NOW, THEREFORE, in consideration of the foregoing and the sum of ten dollars ($10.00), and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee hereby agree as follows:

1. Assignor hereby transfers, grants, conveys and assigns to Assignee all of Assignor's right, title and interest in, to and arising under the Collateral Documents, the Participation Agreements and the Miscellaneous Agreements, and Assignee hereby accepts such assignment and assumes all of Assignor's obligations and liabilities arising from and after the date hereof under or pursuant to the Collateral Documents, the Participation Agreements and the Miscellaneous Agreements. The obligations assumed pursuant to this Agreement include any and all obligations (i) to pay outstanding invoices and bills relating to Loans serviced by Assignor that, if paid by Assignor, would constitute Advances, (ii) to make Advances with respect to Loans serviced by Assignor and (iii) to reimburse another servicer with respect to Loans serviced by others for Advances.

2. Assignee shall indemnify and hold harmless Assignor from and against any and all damages, liabilities, losses, costs, charges, liens, deficiencies and expenses of any nature (including, without limitation, reasonable attorneys' fees and all other actual litigation costs) suffered or incurred by or assessed against Assignor from and after the date hereof as a result of any claim, demand or legal proceeding arising out of or resulting from either Assignee's failure to perform the assumed obligations or pay the assumed liabilities identified in Section 1 above or Assignee's breach of any representation, warranty or covenant contained in this Assignment.

3. This Assignment shall be binding upon and shall inure to the benefit of Assignor and Assignee and their respective successors and assigns.

4. This Assignment is made, executed and delivered pursuant to the Agreement, and is subject to all of the terms, provisions and conditions thereof.

5. This Assignment shall be construed and the rights and obligations of the parties hereto shall be determined in accordance with federal law. To the extent there is no applicable federal law, the law of the State of New York will be deemed conclusively to be reflective of federal law.

6. This Assignment may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.

IN WITNESS WHEREOF, each of the parties has caused this Assignment and Assumption Agreement to be executed and delivered by its duly authorized officer or agent as of the day and year first written above.

**ASSIGNOR:**

Superior Federal Bank FSB

WITNESS Tracy Howard

By:__________________________

Name: John A. Soricelli

Title: Vice President

**ASSIGNEE:**

Ameristar Financial Servicing Company, LLC,

a Delaware Limited Liability Company

WITNESS Janet Nelson

By:__________________________

Name: Richard E. Wonderlic

Title: President

**ACKNOWLEDGMENT**

STATE OF NEW YORK )

SS:

COUNTY OF ROCKLAND )

Before me, the undersigned authority, a Notary Public in and for the county and state aforesaid, on this day personally appeared John A. Soricelli, known to me to be the person whose name is subscribed to the foregoing instrument, as Vice President of Superior Federal Bank FSB and acknowledged to me that s/he executed the same as the act of Superior Federal Bank FSB, for the purposes and consideration therein expressed, and in the capacity therein stated.

Given under my hand and seal of office on this the 21th day of November, 2001.

Notary Public

JESSICA M. MARQUEZ
Notary Public, State of New York
No. 01MA5050641
Qualified in Rockland County
Certificate Filed in New York County
Commission Expires Oct. 16, 2005

[SEAL]

My Commission expires:__________

# ACKNOWLEDGMENT

STATE OF Illinois )
 SS:
COUNTY OF Lake )

THIS INSTRUMENT was acknowledged before me this 20th day of November, 2001, by Richard E. Wonderlic, acting in his/her capacity as President, of Ameristar Financial Servicing Company, LLC.

Notary Public

OFFICIAL SEAL
KARL ANDERSON
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:01/15/03

[SEAL]

My Commission expires: 1/15/03

ATTACHMENT E
to
Retail Installment Loan Purchase Agreement

FORM OF ASSIGNMENT AND LOST INSTRUMENT AFFIDAVIT

ASSIGNMENT AND LOST INSTRUMENT AFFIDAVIT

Loan Pool Number[s]: 450SB

STATE OF NEW YORK )
SS:
COUNTY OF ROCKLAND )

Before me, the undersigned authority, personally appeared ______________________, who upon being duly cautioned and sworn deposes and says, to the best of his/her knowledge, as follows:

1. That s/he is the ______________________ of Superior Federal Bank FSB whose address is One Ramland Road, Orangeburg, NY 10962 ("Seller").

2. That at the time of the preparation of transfer to Ameristar Financial Servicing Company, LLC ("Buyer"), Seller was the owner of that certain Loan, obligation or interest in a Loan or obligation evidenced by a promissory note, evidencing an indebtedness or evidencing rights in an indebtedness (the "Instrument"), as follows:

Loan Number: ______________________

Name of Maker: ______________________

Original Principal Balance: ______________________

Date of Instrument: ______________________

3. That the original Instrument has been lost or misplaced. The Instrument was not where it was assumed to be, and a search to locate the Instrument was undertaken, without results. Prior to the transfer to Buyer the Instrument had not been assigned, transferred, pledged or hypothecated.

4. That if Seller subsequently locates the Instrument, Seller shall use reasonable efforts to provide written notice to Buyer and deliver and endorse the Instrument to Buyer in accordance with written instructions received from Buyer (or such other party designated in writing by Buyer).

5. That the purpose of this affidavit is to establish such facts. This affidavit shall not confer any rights or benefits, causes or claims, representations or warranties (including, without limitation, regarding ownership or title to the Instrument or the obligations evidenced thereby) upon the Buyer, its successors or assigns. All such rights, benefits, causes or claims, representations and warranties (if any) shall be as set forth in the Retail Installment Loan Purchase Agreement between Buyer and Seller dated as of November 27, 2001.

6. That pursuant to the terms and conditions of the aforementioned Retail Installment Loan Purchase Agreement the Instrument (including, without limitation, any and all rights the Seller may have to enforce payment and performance of the Instrument, including any rights under Section 3-309 of the Uniform Commercial Code) is hereby assigned effective as of the date hereof, without recourse, representation or warranty, to Buyer. A copy of the Instrument is attached to this affidavit, if available.

Superior Federal Bank FSB

By:__________________________
Name:________________________
Title: ________________________

Signed and sworn to before me this ___ day of _______________, 200__.

______________________________
Notary Public

[SEAL]

My Commission expires:__________

ATTACHMENT F
to
Retail Installment Loan Purchase Agreement

# FORM OF AFFIDAVIT AND ASSIGNMENT OF CLAIM

## AFFIDAVIT AND ASSIGNMENT OF CLAIM

Loan Pool Number[s]: 450SB

State of ________________)
SS:
County of ________________)

The undersigned, being first duly sworn, deposes and states as follows:

Superior Federal Bank FSB ("Assignor"), acting by and through its duly authorized officers and agents, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged does hereby sell, transfer, assign and set over to Ameristar Financial Servicing Company, LLC "Assignee" of 1425 Tri State Parkway, Suite 180, Gurnee, IL 60031, its successors and assigns, all of the Assignor's interest in any claim in the bankruptcy case commenced by or against ______*[insert Obligor's name]*______ ("Obligor") in the U. S. Bankruptcy Court ___*[insert district of the court, such as for the Western District of Texas]*, being designated as Case Number *[insert docket number assigned case]*__ ("Bankruptcy Claim"), or such part of said Claim as is based on the promissory note of *[insert the names of the makers of the note exactly as they appear on the note]*__, dated *[insert the date the note was made]*__, and made payable to *[insert the name of the payee on the note exactly as it appears on the note]*__, provided, however, that this assignment is made pursuant to the terms and conditions as set forth in that certain Retail Installment Loan Purchase Agreement between the Assignor and the Assignee dated *[insert the date of the governing Retail Installment Loan Purchase Agreement]* (the "Agreement").

For purposes of Bankruptcy Rule 3001, this assignment and affidavit represent the unconditional transfer of the Bankruptcy Claim or such part of the Claim as is based on the promissory note or notes described in paragraph one above and shall constitute the statement of the transferor acknowledging the transfer and stating the consideration therefor as required by said Rule 3001.

The consideration for the transfer was cash. The transfer of the debt was pursuant to the Agreement, through which numerous debts were sold; no specific amount of the total consideration was assigned to the debt that forms the basis of claim.

This assignment shall also evidence the unconditional transfer of the Assignor's interest in any security held for the claim.

IN WITNESS WHEREOF, the Assignor has caused this Affidavit and Assignment of Claim to be executed this __________ day of _________, 200__.

SUPERIOR FEDERAL BANK FSB
By:

______________________________________
Name: ________________________________
Title: ________________________________

## ACKNOWLEDGMENT

STATE OF ____________________)
SS:
COUNTY OF __________________)

Before me, the undersigned authority, a Notary Public in and for the county and state aforesaid, on this day personally appeared ______________________________, known to me to be the person whose name is subscribed to the foregoing instrument, as ____________________ of Superior Federal Bank FSB, and acknowledged to me that s/he executed the same as the act of Superior Federal Bank FSB, for the purposes and consideration therein expressed, and in the capacity therein stated.

Given under my hand and seal of office on this the _______ day of ____________________, 200__.

______________________________
Notary Public

[SEAL]

My Commission expires:__________

# ATTACHMENT G

## LIMITED POWER OF ATTORNEY

KNOW BY ALL MEN BY THESE PRESENTS that Superior Federal Bank FSB ("Superior") with an office at One Ramland Road, Orangeburg, New York 10962 does hereby irrevocably make, constitute and appoint Ameristar Financial Servicing Company, LLC ("Buyer") with an office at 1425 Tri State Parkway, Suite 180, Gurnee, IL 60031, as its attorney-in-fact, to act in Superior's name, place and stead specifically in order to (i) execute, acknowledge, seal and deliver Certificates of Title, Retail Installment Loans and Contracts, Notes, Assignments of Security Interests, Guaranties, Lost Note Affidavits, UCC transfer documents and other instruments of sale, conveyance, and transfer, appropriately completed, with all ordinary or necessary endorsements, acknowledgments, affidavits and supporting documents as may be necessary or appropriate to effect its execution, delivery, conveyance, recordation or filing; and (ii) do all other acts as may be necessary or desirable to fully effectuate the sale and transfer of title of Loans sold by Superior to Buyer under the Retail Installment Loan Purchase Agreement ("Agreement") or to effectuate the enforcement thereof or to perfect, pursue, effectuate or enforce any and/or all of Buyer's rights or interest herein or under the Agreement.

This Power of Attorney is limited to the powers listed above, and may not be modified or otherwise altered.

**TO INDUCE ANY THIRD PARTY TO ACT HEREUNDER, SUPERIOR HEREBY AGREES THAT ANY THIRD PARTY RECEIVING A DULY EXECUTED COPY OR FACSIMILE OF THIS INSTRUMENT MAY ACT HEREUNDER, AND THAT REVOCATION OR TERMINATION HEREOF SHALL BE INEFFECTIVE AS TO SUCH THIRD PARTY UNLESS AND UNTIL ACTUAL NOTICE OR KNOWLEDGE OF SUCH REVOCATION OR TERMINATION SHALL HAVE BEEN RECEIVED BY SUCH THIRD PARTY.**

WITNESS, my hand and seal this 21st day of November, 2001

By: ______________________________

Print Name: John A. Soricelli, Vice President

## ACKNOWLEDGMENT

STATE OF NEW YORK )
SS:
COUNTY OF ROCKLAND )

On the 21st day of November, 2001, before me personally appeared herein and acknowledged to me that he executed the same.

Jessica M. Marquez
Notary Public

JESSICA M. MARQUEZ
Notary Public, State of New York
No. 01MA5050641
Qualified In Rockland County
Certificate Filed In New York County
Commission Expires Oct. 16, 2005

~0002671

12:59 PM11/27/01

## AUTO LOAN SALE
## SETTLEMENT STATEMENT

Between

| Seller | Buyer | Description | # of loans | Inv. # | Pool No. | Book Value | Bid Percentage | Purchase Price | Total Deposit Due | Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| Superior Federal Bank FSB | Ameristar Financial Servicing Company | Deficiencies | 6,009 | 839 | 450SB | $39,294,623.50 | 1.3400 | $526,547.94 | $52,654.79 | $473,893.15 |
| Loan Deleted: | #900567967 Gloria M. Brown | | -1 | | | -$23,588.00 | | | | |
| | | | 6,008 | | | $39,271,035.50 | 1.3400 | $526,231.87 | $52,654.79 | $473,577.08 |