No. 06-424C
Chief Judge Damich

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**AMERISTAR FINANCIAL SERVICING COMPANY, LLC,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND APPENDIX

---

Andrew Grosso, Esq.
Andrew Grosso & Associates
1250 Connecticut Avenue, NW
Suite 200
Washington, D.C. 20036
(202) 261-3593
Agrosso@acm.org

October 10, 2006

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I. Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II. The Court Has Jurisdiction Over The FDIC's Conduct Controlling A Newly Created Federal Savings Bank . . . . . . . . . . . . . . . . . . . . . . 6

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

## Cases

*AG Route Seven Partnership v. United States*, 57 Fed. Cl. 521 (2003) . . . . . . . . . . . . . . 10

*Ambase v. United States*, 58 Fed. Cl. 32 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ambase v. United States*, 61 Fed. Cl. 794 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Capron v. Van Noorden*, 6 U.S. (2 Cranch) 126 (1804) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Cedars-Sinai Medical Ctr. v. Watkins*, 11 F.3d 1573 (1993) . . . . . . . . . . . . . . . . . . . . . . 6

*Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380 (1947) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gould Elecs, Inc. v. United States*, 220 F.3d 169 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . 6

*Hamlet v. United States*, 873 F.2d 1414 Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*I.M. Frazier v. United States*, 288 F.3d 1347 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . .10

*Myers v. Putzmeister, Inc*., 232 Ill. App. 3d 419,
596 N.E.2d 754 (Ill. App. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*O'Melveney & Meyers v. Federal Deposit Insurance Corporation*,
512 U.S. 79 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-9

*Oxxford Clothes XX, Inc. v. Expeditors Int'l of Washington, Inc*.,
127 F.3d 574 (7th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Spruill v. Merit Sys. Protection Bd*., 978 F.2d 679 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . 6

*Trauma Serv. Group v. United States*, 104 F.3d 1321 (Fed. Cir. 1997) . . . . . . . . . . . . . 11

## Other Authorities

12 U.S.C. § 1821(d)(2)(A)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

12 U.S.C. § 1464(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

66 Fed. Reg. 41085 (July 31, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Marketing and Resolution of Superior Federal, FSB (New Superior)*
(FDIC OIG Audit Report No. 02-024, July 24 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **AMERISTAR FINANCIAL SERVICING COMPANY, LLC,** | ) | |
| Plaintiff, | ) | **CASE NO. 06-424C** |
| **v.** | ) | **Chief Judge Damich** |
| **UNITED STATES OF AMERICA,** | ) | |
| Defendant | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Ameristar Financial Servicing Company, LLC, through its undersigned attorney, hereby submits this Opposition to Defendant's Motion to Dismiss:

**STATEMENT OF THE ISSUES**

Whether this Court has jurisdiction over a breach of contract by the FDIC and a federal savings bank under the control of the FDIC, into which the assets of an previously existing, failed savings bank were transferred, where the Office of Thrift Supervision first created the new federal saving bank and then immediately appointed the FDIC as its conservator?

**STATEMENT OF THE CASE**

On May 24, 2006, Plaintiff Ameristar Financial Servicing Company, LLC ("Ameristar Financial") filed this lawsuit against the United States alleging three counts.

All three counts concern a contract between Ameristar Financial and a newly created savings bank ("new bank") under the conservatorship of the FDIC. The Office of Thrift Supervision first created the new bank, then immediately placed it under the conservatorship of the FDIC. Simultaneously, the FDIC was named receiver of a second, failed savings bank ("failed bank"), and assets of the failed bank were transferred into the new bank. Thereafter Ameristar Financial entered into the contract with the new bank.

The Complaint relies upon the principal that the new bank is an agent of the United States and *not a pre-existing entity*, and, therefore, the mere transfer of assets from the failed bank into the new bank does not shield the United States from direct liability under the new contract that the new bank and its conservator, the FDIC, a government agency, chose to enter.

Count One alleges that the FDIC, through its conduct as the conservator of the new bank and receiver of the failed bank, breached the contract between Ameristar the new bank. Count Two alleges that the FDIC, through similar conduct, breached the covenant of good faith and fair dealing implied by the contract. Count Three alleges an unconstitutional taking by the FDIC of the value of the contract, doing so for a government purpose.

**STATEMENT OF FACTS**

This case arises from the failure of a federal savings bank, Superior Bank, FSB ("Old Superior") and the subsequent creation by the Government of a new federal savings bank, Superior Federal, FSB ("New Superior"), into which the Government then

transferred certain insured accounts from Old Superior.[1]

**A. Ameristar Financial**

Ameristar Financial Servicing Company, LLC ("Ameristar Financial") is a private corporation with its principal place of business in Libertyville, Illinois. Compl. ¶ 3. At all relevant times the president of Ameristar Financial was Richard Wonderlic. Compl. ¶ 4.

**B. Old Superior and New Superior**

Old Superior operated with its principal place of business in Hinesdale, Illinois. Compl. ¶ 6. Among its operating divisions was its Servicing Division, with offices in Orangeburg, New York. Compl. ¶¶ 10-11.

On July 27, 2001, the Office of Thrift Supervision ("OTS"), a federal agency, closed Old Superior and placed it under the receivership[2] of the Federal Deposit Insurance Corporation ("FDIC"), also a federal agency.[3] Compl. ¶ 7.

On the same day, OTS created New Superior,[4] naming the FDIC as its conservator.[5]

---

[1] For the purpose of this Opposition, the allegations in the Complaint are taken as true. Citations indicated by "Compl. ¶ _" are to paragraphs in the Complaint.

[2] "A receiver is an agent appointed by a failed institution's primary federal regulator to manage the orderly liquidation of the failed institution." *Marketing and Resolution of Superior Federal, FSB (New Superior)* ¶ 1 (FDIC OIG Audit Report No. 02-024, July 24 2002).

[3] The power of the OTS to appoint the FDIC as a receiver or conservator is found in Section 5(d)(2) of the Home Owners' Loan Act, 12 U.S.C. § 1464(d)(2).

[4] The power of the OTS to charter and incorporate new federal savings banks is found in Section 5(a) of the Home Owners' Loan Act, 12 U.S.C. § 1464(a).

[5] "A conservator is a person or entity, including a government agency, appointed by a regulatory authority to operate a troubled financial institution in an effort to conserve, manage, and protect the troubled institution’s assets until the institution has

Compl. ¶¶ 8-9; Pl. App. 1[6]; 66 Fed. Reg. 41085 (July 31, 2001). Certain assets of Old Superior were then transferred into New Superior. Compl. ¶ 9. The Servicing Division of Old Superior thereafter acted as the servicing agent for New Superior. Compl. ¶ 11.

**C. The Ameristar Contract**

Prior to Old Superior's failure, it made nine loans to NFL Industries and Joseph Suarez (the "Suarez loan pool"), totaling $304,566.53 and secured by nine assets (autos and trucks). Compl. ¶ 12. In February 2000, the Servicing Division of Old Superior filed a lawsuit against NFL Industries and Joseph Suarez in Superior Court, Bergen County, New Jersey, demanding satisfaction on the promissory notes secured by the nine assets. Compl. ¶ 13; Def. App. 1-8. On September 13, 2001, a judgment was entered on behalf of Old Superior's Servicing Division for the full amount plus costs. Compl. ¶ 16; Def. App. 9.

On November 27, 2001, Ameristar Financial executed a contract with New Superior (the "Ameristar Contract"). This contract had an effective closing date of November 26, 2001, Compl. ¶ 15, as well as "Calculation Date" of November 8, 2001. Compl. ¶ 17. The contract provided that all loan payments arising from the Suarez loan pool received by New Superior on or after the Calculation Date, that is, on or after November 8, 2001, belonged to Ameristar Financial. Compl. ¶ 17; Ameristar Contract § 2.2 at Def. App. 9-10.

The FDIC, acting as conservator of Superior Federal, approved the Ameristar Contract. Compl. ¶ 18. Then, acting as receiver for Old Superior, the FDIC executed a

---

stabilized or has been closed by the chartering authority." *Marketing and Resolution of Superior Federal, FSB (New Superior)* ¶ 1.

[6] The notation "Pl. App. __" refers to the Plaintiff's Appendix. The notation "Def. App. __" refers to the Defendant's Appendix.

Limited Power of Attorney appointing Richard Wonderlic as Attorney-in-Fact for the FDIC, granting to Mr. Wonderlic "full power to act individually in the name, place and stead of the FDIC for the limited purpose of fulfilling the goals of the contract, that is, to collect on the Suarez loans and judgment. *Id*.; Pl. App. 2. This power of attorney was executed December 20, 2001, and expressly specified that it was effective for a two year period beginning November 14, 2001, "unless otherwise terminated by any official of the FDIC authorized to do so by the Board of Directors of FDIC . . . ." Compl. ¶ 19.

**D. The Breach of Contract**

On November 30, 2001, the Servicing Division, acting as the agent for another financial institution, LaSalle National Bank, N.A., settled an outstanding loan with Joseph Suarez and his wife, Elizabeth, that was unrelated to the loans in the Suarez loan pool. Compl. ¶ 25; Def. App. 46. Compl. ¶ 23. The amount of this settlement was $550,000. Compl. ¶ 25. As part of this settlement, the Servicing Division included settlement of the nine loans in the Suarez loan pool. Compl. ¶ 26. Specifically, the Servicing Division agreed in writing to forgive the outstanding loans in the Suarez loan pool, and to a discharge and satisfaction of the judgment in the Bergen County Court in the amount of $304,566.53.

On behalf of Joseph Suarez, a law firm presented a check in the amount of $550,000, dated November 30, 2001. This check was deposited by the Servicing Division on December 7, 2001. Compl. ¶ 28.

## ARGUMENT

### I. Standard of Review

A Rule 12(b)(1) motion may be treated as either a facial or a factual challenge to the court's subject matter jurisdiction. If the motion simply challenges the court's jurisdiction based on the sufficiency of the pleading's allegations, that is, if it is a "facial" attack on the pleading, then the allegations are taken as true and construed in a light most favorable to the complainant. *Cedars-Sinai Medical Ctr. v. Watkins*, 11 F.3d 1573, 1583 (1993). If, instead, the motion makes a factual attack, the court may consider evidence outside the pleadings. *Gould Elecs, Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

The allegations in a complaint, taken alone, can be sufficient to overcome challenges to jurisdiction. *Spruill v. Merit Sys. Protection Bd*., 978 F.2d 679, 686 (Fed. Cir. 1992).

### II. The Court Has Jurisdiction Over The FDIC's Conduct Controlling A Newly Created Federal Savings Bank

In examining the argument made by the Defendant that this Court does not have jurisdiction over the claims asserted in the Complaint, the Defendant's error can be identified in the following statement, found on page eight of its Motion to Dismiss: "The United States Supreme Court . . . has stated that 'the FDIC is not the United States' when acting in its capacity as a receiver for a failed bank. *O'Melveney & Meyers v. Federal Deposit Insurance Corporation*, 512 U.S. 79, 85 (1995)."

*O'Melveney & Meyers* is not applicable to this dispute. Here, the contract at issue is *not* between the Plaintiff and a pre-existing failed bank, as was true in *O'Melveney &*

*Meyers*. Instead, the contract is between the Plaintiff and *a newly created entity*, created by a government agency, into which had been transferred assets of a pre-existing failed bank. The well settled, general rule is that the transfer of assets from one corporate entity to another does not also transfer corporate liabilities, including contractual obligations. *Oxxford Clothes XX, Inc. v. Expeditors Int'l of Washington, Inc*., 127 F.3d 574, 578 (7th Cir. 1977); *Myers v. Putzmeister, Inc*., 232 Ill. App. 3d 419, 596 N.E.2d 754, 755 (Ill. App. 1992). This is because the receiving corporation is not the same legal entity as the transferor. For this reason among others, the analysis relied upon the Defendant is in error.

The pertinent facts in *O'Melveney & Meyers* were as follows. American Diversified Savings Bank ("ADSB") was a state chartered and federally insured savings and loan that had come into existence sometime prior to 1983. In 1986, the Federal Savings and Loan Insurance Corporation ("FSLIC") was appointed as its receiver. Subsequently the FDIC became the receiver.[7] *Id*. at 81.

Prior to ADSB being placed in receivership, the law firm O'Melveney & Meyers provided legal representation to the savings and loan. In their capacities as receivers, the FSLIC and later the FDIC brought suit against the law firm, alleging that O'Melveney and Myers breached its fiduciary duty to ADSB and committed professional negligence in connection with this representation. *Id*. at 82.

The Supreme Court concluded that in bringing the lawsuit, the FDIC was acting not as an agency of the federal government but rather as the failed saving and loan. Further, the Supreme Court recognized that in bringing this lawsuit, the FDIC was

---

[7] The FSLIC was initially appointed receiver for ADSB. When the FSLIC was abolished by Congress in 1988, the FDIC assumed the receivership. *Id*. at 82 n.1.

enforcing a *pre-existing* right, held by the savings and loan before the FDIC was appointed its receiver. *Id.* at 86.

In contrast, the contract with which we are here concerned was not executed by a failed bank, but by a newly created entity, Federal Superior Bank, FSB ("New Superior"). The new bank was created by a government agency, the Office of Thrift Supervision ("OTS"), on July 27, 2001. On the same day that it appointed the FDIC to be New Superior's conservator it also appointed the FDIC to be receiver of the failed bank, Superior Bank, FSB ("Old Superior"). After creating New Superior, the OTS transferred certain assets, *i.e.*, insured accounts, from the failed bank to the new bank.

The analysis found in *O'Melveney & Myers* relied upon by the Defendant is inapplicable for two reasons.

*First*, New Superior is not the same entity as the failed bank - it is a new and legally distinct entity. As such, the rights and obligations of the failed bank were not automatically assumed by Federal Superior, *Oxxford Clothes XX, Inc.*, 127 F.3d at 578; *Myers,* 596 N.E.2d at 755, and the FDIC did not "step into the shoes" of the failed bank in its role as conservator of the new bank. To the contrary, Federal Superior exercised new rights and incurred new obligations, doing so as an agent of its creator, owner, and conservator, this being the United States acting through the OTS and the FDIC.

*Second*, the obligations incurred by New Superior under the Ameristar Contract were not in existence at the time that Old Superior, the failed bank, went into receivership: the FDIC became receiver of Superior Bank on July 27, 2001, while the new bank executed its contract with Ameristar *some four months later*, on November 27, 2001. The holding of *O'Melveney & Myers* does not apply to new rights and obligations

incurred by the FDIC that come into existence only after the FDIC assumes the receivership of a failed entity.

These principles are supported by the Supreme Court's holding in *O'Melveney & Myers*. As part of its analysis, the Court explained:

> Section 1821(d)(2)(A)(i) . . . states that "the [FDIC] shall, by operation of law, succeed to -- all rights, titles, powers, and privileges of the insured depository institution . . . ." 12 U.S.C. § 1821(d)(2)(A)(i) (1988 ed. Supp. IV). This language appears to indicate that the FDIC as receiver "steps into the shoes" of the failed S&L, cf. *Coit Independence Joint Venture v. FSLIC*, 489 U.S. 561, 585 (1989), *obtaining the rights "of the insured depository institution" that existed prior to receivership.*

*Id*. at 86 (emphasis added). As already estbalished, New Superior, as a newly created bank, did not exist prior to either its conservatorship or Old Superior's receivership; and the Ameristar Contract, along with the rights and obligations under that contract, did not come into existence until some four months after both events.

New Superior was a creation of the OTS, established in order to act for and to carry out a function of the federal government. It was placed under the control of the FDIC, another federal agency, to execute this function. It was never in private hands, and from the moment of its inception until its demise it was under the ownership and control of the United States. As such, New Superior served at all times as an agent of the FDIC, and its conduct in executing and fulfilling the Ameristar Contract was conduct of the United States.

Defendant cites three additional cases in support of its argument on this point. Each is inapplicable to inasmuch as the relevant federal agency acted as a receiver for a pre-exiting, failed financial institution and not, as is true here, as a conservator for a new institution created by the government:

(1) In *Ambase v. United States*, 61 Fed. Cl. 794 (2004), the FDIC acted as the receiver for a pre-existing failed thrift, Carteret Savings Bank, F.A., *see Ambase v. United States*, 58 Fed. Cl. 32, 34-35 (2003);

(2) In *I.M. Frazier v. United States*, 288 F.3d 1347, 1349-50 (Fed. Cir. 2002), the Resolution Trust Corporation acted as receiver for a pre-existing failed Texas bank, Superior Federal Savings Bank; and

(3) While *AG Route Seven Partnership v. United States*, 57 Fed. Cl. 521 (2003) appears similar to the instant case, in that an "old" Surety Federal Savings & Loan Association, FSA existed, a "new" Surety Federal was thereafter created, and a transfer of assets occurred from the first to the second, this transfer of assets occurred some four years *before the FDIC became the receiver for the new Surety Federal*, and thus the new Surety Federal institution was actually a failed pre-existing institution.

In summary, Defendant has not identified a single case where the United States first took over control of a failing financial institution and then (1) created a brand new institution under Government ownership and control which (2) entered into contracts with private parties with the express direction and approval of the United States.

Here, the FDIC did not attempt, in its capacity as receiver of Old Superior, to collect directly on the loans from NFL Industries or Joseph Suarez. Instead, it entered into a new and separate contract with Ameristar Financial to carry out this goal. In other words, the FDIC, as a federal agency, procured the services of Ameristar Financial to accomplish its goal, and choosing to do this not through Old Superior, the pre-existing entity, but through its own agent and instrumentality, New Superior, which was created by the United States only after Old Superior had already failed and been placed in

receivership.

A federal entity can perform functions and enter into binding contracts through agents. *See Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 381 (1947) (finding that while Federal Crop Insurance Corporation ("FCIC") used a county committee as agent, plaintiff's good-faith reliance upon committee's erroneous information as to applicability of FCIC's regulations did not bind the FCIC). Here, there is no question that (a) the FDIC and (b) New Superior, which was created by one Government agency, the OTS, and controlled by a second, the FDIC, both acted within the scope of their authority. Thus, the Ameristar Contract, executed by New Superior at the direction of the FDIC, bound the FDIC as a federal agency and thus bound the United States.

To state a claim upon which relief can be granted, a plaintiff must allege either an express or an implied-in-fact contract, and the breach of that contract. *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997).[8]

Here, Ameristar Financial has alleged a fact pattern establishing an express contract between itself and the FDIC, with New Superior acting as the agent for the FDIC, whereby the FDIC procured the services of Ameristar Financial to act as a collection agency Old Superior's outstanding loans. Alternatively, the factual scenerio demonstrates that an implied contract between the FDIC and Ameristar Financial whereby, again, the FDIC procured the services of Ameristar Financial as a collection agency. Nowhere is there any evidence that the contract at issue was executed by Old Superior, the pre-existing financial institution. The conduct of the Servicing Division,

---

[8] A plaintiff may also assert a claim under the U.S. Constitution, *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir. 1987). Ameristar has done so in Count Three of its Complaint, Defendant has not attacked this count in its Motion to Dismiss.

under the control of the FDIC and acting as the servicing agent for New Superior, constituted a breach of this contract, as asserted in Counts One and Two of the Complaint.

Defendant's reliance upon the venue language in Section 10.9 of the Ameristar Contract, Def. App. 32, to establish that jurisdiction lies not in this Court but in the District Court for the District of Columbia, is misplaced. Substantive jurisdiction cannot be stipulated to or otherwise agreed upon by parties to a contract. Reliance upon substantive jurisdiction where none exists can result in a judgment being vacated on appeal. *Capron v. Van Noorden*, 6 U.S. (2 Cranch) 126 (1804). Furthermore, this provision, by its terms, refers to venue, not jurisdiction.[9]

[9] Section 10.1 of the Ameristar Contract provides that if any provision is deemed invalid, the remaining portions of the contract shall remain in effect. Def. App. 31.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss must be denied.

In the event that this Honorable court deems the allegations in any count of the Complaint to be insufficient, Plaintiff asks for leave to amend the Complaint to satisfy such deficiency.

Respectfully submitted,

/s/ Andrew Grosso
ANDREW GROSSO, ESQ.
Andrew Grosso & Associates
1250 Connecticut Avenue, NW
Suite 200
Washington, D.C. 20037
Tel.: (202) 261-3593
Fax: (202) 261-3595
Agrosso@acm.org

October 10, 2006

Attorneys for Plaintiff