# In the United States Court of Federal Claims

No. 06-424 C

(Filed: March 30, 2007)

| | | |
|---|---|---|
| **AMERISTAR FINANCIAL SERVICING, COMPANY, LLC**, Plaintiff, | * | Contracts; Motion to Dismiss; Financial Institution Reform, Recovery and Enforcement Act, 12 U.S.C. § 1464; 12 U.S.C. § 1821; Tucker Act, 28 U.S.C. § 1491; whether the FDIC as receiver or conservator of a federal savings bank is the United States. |
| v. | * | |
| **THE UNITED STATES**, Defendant. | * | |

## OPINION

*Andrew Grosso*, Washington, DC, counsel of record for Plaintiff.

*Steven M. Mager*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., counsel of record for Defendant, with whom were *Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, and *Mark A. Melnick*, Assistant Director.

**DAMICH**, Chief Judge.

This case is before the Court on Defendant's motion to dismiss the complaint filed by Ameristar Financial Servicing Company, LLC ("Ameristar") on May 24, 2006, in its entirety for lack of subject matter jurisdiction. Plaintiff alleges that the Federal Deposit Insurance Corporation ("FDIC") is responsible for breach of a contract Ameristar entered into with a then-newly established federal savings bank for which the FDIC was acting as conservator. Defendant asserts in its motion that the FDIC, in its capacity as receiver or conservator of a federal savings bank, is not the United States ("Government") for the purposes of this case. For the reasons

discussed herein, the Court **GRANTS** Defendant's motion to dismiss for lack of subject matter jurisdiction.

## BACKGROUND[1]

Superior Bank, FSB ("Superior") was a failed federal savings bank located in Hinesdale, Illinois. Compl. ¶ 6. On July 27, 2001, the Office of Thrift Supervision ("OTS") closed Superior and appointed the FDIC as receiver[2] of the bank. Compl. ¶ 7. On the same day, a new federal savings bank, Superior Federal, FSB ("Superior Federal") was chartered by OTS and Superior's federally-insured deposit accounts were transferred by the FDIC to Superior Federal. Compl. ¶ 8-9. Also on that day, FDIC was appointed by OTS as conservator[3] of Superior Federal. Compl. ¶ 9; *see* 12 U.S.C. § 1821(c)(6) (2000).

Prior to entering receivership, Superior had issued nine secured loans (the "Suarez Loan Pool" or "Suarez Loans") to NFL Industries and Joseph Suarez in the aggregate amount of $304,566.53. Compl. ¶ 12. On February 17, 2000, an action was filed by Superior against NFL and Suarez in Superior Court of New Jersey, Bergen County, demanding satisfaction of the promissory notes. Compl. ¶ 13. On September 13, 2001, the court entered judgment on behalf of Superior in the amount of $304,566.53, plus costs. Compl. ¶ 14.

On November 26, 2001, Superior Federal entered into a contract (the "Contract")–via the FDIC as conservator–to "sell, assign, transfer and convey to" Ameristar "all the right, title and interest of [Superior Federal], as of the Closing Date [November 30, 2001], in and to each" loan in the Suarez Loan Pool. Compl. ¶ 15 (citing Contract § 2.1). Section 2.2 of the Contract stated the following: "All Loan payments received by [Superior Federal] on or after the Calculation Date [November 8, 2001] shall belong to [Ameristar]." Contract § 2.2; *see also* Contract § 1.13. On or about November 30, 2001, Superior entered into a settlement agreement with Joseph and Elizabeth Suarez, in which the payment of $550,000 in cash, and a $100,000 mortgage, forgave the following obligations: (1) an outstanding loan between LaSalle Bank and the

---

[1] The recitations that follow do not constitute findings of fact by the Court. Rather, the recited factual elements are taken from the parties' filings and are either undisputed or alleged and assumed to be true for the purposes of the pending motion.

[2] "A receiver is an agent appointed by a failed institution's primary federal regulator to manage the orderly liquidation of the failed institution." *Marketing and Resolution of Superior Federal, FSB* ¶ 1 (FDIC OIG Audit Report No. 02-024, July 24 2002).

[3] "A conservator is a person or entity, including a government agency, appointed by a regulatory authority to operate a troubled financial institution in an effort to conserve, manage, and protect the troubled institution's assets until the institution has stabilized or has been closed by the chartering authority." *Marketing and Resolution of Superior Federal, FSB* ¶ 1 (FDIC OIG Audit Report No. 02-024, July 24 2002).

Suarez's–Superior was the servicing agent on the loan–*and* (2) the outstanding loans in the Suarez Loan Pool, including the discharge and satisfaction of the aforementioned judgment. Compl. ¶ 26-28.

On April 13, 2005, Ameristar requested payment from the FDIC in the amount of $304,566.53–the precise amount of the judgment against NFL and Suarez regarding the Suarez Loans. Compl. ¶ 32. The FDIC denied Ameristar's claim on May 18, 2005, and also denied its subsequent request for reconsideration. Compl. ¶¶ 33-34.

Plaintiff filed its complaint in this Court on May 24, 2006, seeking $304,566.53 in compensation for the FDIC's conduct–as receiver of Superior and as conservator of Superior Federal–in connection with the Contract.[4] Compl. at 1, 12. Ameristar alleges that the failure of the FDIC to cause the payment, at least in part, of the Suarez settlement amount to Ameristar, constitutes a breach of the Contract (Count I) and a breach of the implied covenant of good faith and fair dealing (Count II). *See* Compl. ¶ 29-46. Ameristar also contends that the FDIC's actions constitute a compensable taking under the Fifth Amendment (Count III). *See* Compl. ¶ 48-60.

## DISCUSSION

### I. Standard of Review

In considering Defendant's motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all of Plaintiff's well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the Plaintiff's favor. *Godwin v. United States*, 338 F.3d 1374, 1377 (Fed. Cir. 2003). Plaintiff, however, bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002).

The jurisdiction of the Court of Federal Claims is "prescribed by the metes and bounds of the United States' consent to be sued in its waiver of immunity." *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461 (Fed. Cir. 1998) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *Fed. Nat'l Mortgage Assoc. v. United States*, 379 F.3d 1303, 1311 (Fed. Cir. 2004) (citing *United States v. King*, 395 U.S. 1, 4 (1969)). The Tucker Act provides explicit consent to suit for claims "*against the United States* founded either upon the Constitution or any Act of Congress or any regulation of an executive department, or upon any express or implied contract *with the United States* . . . ." 28 U.S.C. § 1491(a)(1) (2000) (emphasis added).

---

[4] Plaintiff captioned its complaint as *Ameristar Financial Servicing Company, LLC v. Federal Deposit Insurance Corporation*, but the Clerk of the Court captioned this case as *Ameristar Financial Servicing Company, LLC v. United States* shortly after it was filed.

## II. Analysis

In enacting the Financial Institution Reform, Recovery and Enforcement Act of 1989 ("FIRREA"),[5] Pub.L. 101-73, 103 Stat. 183, Congress contemplated the factual scenario in which the Office of Thrift Supervision would create a new federal savings bank to replace a failed one that was closed and has gone into receivership and would appoint the FDIC as conservator of the new bank, and in which the FDIC would transfer the assets of the failed bank to the new one.[6] First, the Director of the Office of Thrift Supervision ("Director") has fairly broad authority to "(1) provide for the organization, incorporation, examination, operation, and regulation of associations to be known as Federal savings associations (including Federal savings banks) and (2) to issue charters therefor . . . ." 12 U.S.C. § 1464(a) (2000).[7] In addition, the Director may appoint a conservator or receiver for any federal savings bank if the Director determines that the bank is, inter alia, insolvent or undercapitalized. 12 U.S.C. § 1464(d)(2)(A) (2000); *see also* 12 U.S.C. § 1821(c)(5) (2000). Moreover, the Director may use his or her discretion to appoint the FDIC as conservator or receiver of the bank. 12 U.S.C. § 1821(c)(6) (2000). Lastly, as conservator or receiver, the FDIC has the authority to transfer any asset or liability of the failed bank to another "insured depositary institution," including a newly established bank. *See* 12 U.S.C. § 1821(d)(2)(G) (2000).

The Defendant's argument here primarily focuses on the Supreme Court's decision in *O'Melveny & Myers v. Fed. Deposit Ins. Corp.*, 512 U.S. 79 (1994) ("*O'Melveny*"), which affirmed the proposition that "the FDIC is not the United States" when it acts in its capacity as

---

[5] FIRREA was enacted in the wake of the well-documented savings and loan crisis of the 1980s. *See, e.g., United States v. Winstar Corp.*, 518 U.S. 839, 843-58 (1996). FIRREA "restructured the federal agencies responsible for regulating and insuring thrift institutions," leading to, inter alia, the creation of OTS. *Far W. Fed. v. Office of Thrift Supervision*, 930 F.2d 883, 886 (Fed. Cir. 1991).

[6] In addition to the authority recited infra for this proposition, another noteworthy section of the statute nearly anticipates the instant factual scenario in that it explains that a new bank shall be organized by the FDIC "if [the FDIC] finds it advisable and in the interest of the depositors of the insured bank in default or the public . . . to assume the insured deposits of such bank in default . . . ." 12 U.S.C. § 1821(m) (2000). While this section applies to the creation of a new bank by the FDIC–not OTS, which organized Superior Federal here–it demonstrates that Congress foresaw that new federal savings banks could be created into which the assets from failed federal savings banks would be transferred.

[7] FIRREA provides, however, that a charter shall be granted only to "(1) persons of good character and responsibility, (2) if in the judgement of the Director a necessity exists for such an institution in the community to be served, (3) if there is a reasonable probability of its usefulness and success, and (4) if the association can be established without undue injury to properly conducted existing local thrift and home financing institutions." 12 U.S.C. § 1464(e) (2000).

receiver for a failed bank. *Id.* at 85. Defendant argues that the Court lacks jurisdiction over Ameristar's claims because they are made against the FDIC merely in its capacities as receiver of Superior and as conservator of Superior Federal, and, therefore, Plaintiff has no claim against the United States pursuant to the Tucker Act. Def.'s Mot. at 5.

In *O'Melveny*, the law firm O'Melveny & Myers represented a federal savings bank prior to its failure and placement into receivership. *Id.* at 82. As receiver, the FDIC brought suit against the law firm, alleging that its poor representation of the bank constituted a breach of its fiduciary duty and negligence. *Id.* The issue before the Supreme Court was whether state law or federal law governed the tort liability of the attorneys that represented the bank. *Id.* at 81. In reaching its conclusion that state law should govern, the Supreme Court determined that the FDIC was not bringing its suit as the government,[8] but instead was "stepping into the shoes" of the failed thrift and asserting its rights. *Id.* at 86, 89. The Court explained that "the FDIC is not the United States . . . [t]he rules of the decision at issue here do not govern the primary conduct of the United States or any of its agents or contractors, but affect only the FDIC's rights and liabilities as receiver . . . ." *Id.* at 85, 88; *see also Frazier v. United States*, 288 F.3d 1347, 1354 (Fed. Cir. 2002) ("the FDIC is not the government for purposes of Winstar claims"); *AG Route Seven P'ship v. United States*, 57 Fed. Cl. 521, 534 (2003) ("the FDIC's attendant role herein [as receiver] is tantamount to that of a private party, and not the government per se"); *Ambase v. United States*, 61 Fed. Cl. 794, 796-97 (2004) (explaining that a claim against the FDIC as receiver is not a claim versus the government, in part because the Federal Circuit has found that the "FDIC receiver could intervene against the United States").

Defendant argues that the Court should extend the Supreme Court's decision in *O'Melveny*, which involved the FDIC acting in its capacity as receiver, to the context of the FDIC when acting in its capacity as conservator. Def.'s Mot. at 9. Defendant contends that the FDIC in the instant case was "[a]cting in the interests of the depositors and investors" and is, therefore, "more akin to a private party" than the Government. Def.'s Reply at 2, 3.

Plaintiff does not advance any argument to refute the principle that the "FDIC is not the United States" when it acts as receiver for a failed federal savings bank. Instead, Plaintiff attempts to distinguish the instant case from *O'Melveney*. Its argument hinges on the Supreme Court's language in *O'Melveney* that the FDIC as receiver "steps into the shoes" of the failed thrift, "obtaining the rights 'of the insured depository institution' that existed *prior to* receivership." *O'Melveney*, 512 U.S. at 86 (emphasis added). Plaintiff alleges that because the

---

[8] When the FDIC acts as an insurer of bank deposits, it acts in a legal capacity that is separate and distinct from that as a receiver or conservator of a thrift. *See E.I. du Pont de Nemours & Co. v. FDIC*, 32 F.3d 592, 595 (D.C. Cir. 1994); *Jones v. FDIC*, 748, F.2d 1400, 1402 (10th Cir. 1984); *FDIC v. Ashley*, 585 F.2d 157 (6th Cir. 1978). Accordingly, the FDIC in its corporate capacity is not liable for claims against the FDIC in its capacity as receiver or conservator. *See Beighley v. FDIC*, 868 F.2d 776 (5th Cir. 1989); *FDIC v. Roldan Fonseca*, 795 F.2d 1102 (1st Cir. 1986); *Trigo v. FDIC*, 847 F.2d 1499 (11th Cir. 1988).

instant case not only involves the FDIC as receiver of a pre-existing federal savings bank, but also involves the FDIC as the conservator of a "new and legally distinct entity . . . [that] exercised new rights and incurred new obligations," the FDIC is the United States here. *See* Pl.'s Resp. at 8. Essentially, Plaintiff argues that because Superior Federal was, unlike Superior, "never in private hands"–being at all times "under the ownership and control of the United States"–the FDIC as conservator here did not "step into the shoes" of Superior Federal in the same way that the FDIC as receiver of a failed, pre-existing bank would. *See* Pl.'s Resp. at 8-9.

In finding that the FDIC in its capacity as receiver is "not the United States" in *O'Melveny*, the Supreme Court principally considered 12 U.S.C. § 1821(d)(2)(A), as amended by FIRREA. This section of the statute concerns the "[p]owers and duties of [the FDIC] as . . . conservator or receiver," and successor to an institution, providing as follows:

> The [FDIC] shall, *as conservator or receiver*, and by operation of law, succeed to–(i) all rights, titles, powers and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution[.]

12 U.S.C. § 1821(d)(2)(A) (2000) (emphasis added); *see also O'Melveney*, 512 U.S. at 85. The Supreme Court found that the above "language appears to indicate that the FDIC as receiver 'steps into the shoes' of the failed S & L . . . obtaining the rights '*of* the insured depository institution' that existed prior to receivership" and "assert[s] the claims of the S & L" in litigation. *O'Melveny*, 512 U.S. at 86 (emphasis in original). This Court finds it consistent to apply the same principle when the FDIC acts as conservator. This is, at least in part, because the *O'Melveny* Court based its finding that the FDIC as receiver "stepped into the shoes" of the failed thrift on a section of FIRREA that applies equally to the FDIC as conservator as it does to the FDIC as receiver. The Supreme Court's analysis would likely have been no different no matter which section of FIRREA was at issue. Indeed, FIRREA grants the FDIC as conservator almost identical powers and the same independent authority (from other government agencies and departments) as it grants the FDIC as receiver.[9] In particular instances in which the statute

---

[9] By way of example, the FDIC may, either as receiver or conservator:

> (i) take over the assets of and operate the insured depository institution with all the powers of the members or shareholders, the directors, and the officers of the institution and conduct all business of the institution; (ii) collect all obligations and money due the institution; (iii) perform all functions of the institution in the name of the institution which are consistent with the appointment as conservator or receiver; and (iv) preserve and conserve the assets and property of such institution.

grants certain authority to the FDIC in one capacity that is not granted to it in its other capacity,[10] the differences are merely incidental to the inherently distinct role the FDIC plays when acting as receiver versus acting as conservator. *See* 12 U.S.C. § 1821(d)(2)(D)-(E) (2000).

Although it may be true that Superior Federal was technically never "in private hands," as Plaintiff points out, it was created to facilitate Superior's liquidation. Prior to the FDIC's having been appointed conservator of Superior Federal, the bank had no value. Superior Federal only acquired value under conservatorship by virtue of the transfer of Superior's assets to it. The FDIC's role as conservator here was, consequently, to "preserve and conserve" the assets Superior Federal acquired from Superior; the United States was neither the source of nor the owner of the assets. *See* 12 U.S.C. § 1821(d)(2)(B)(iv) (2000). Thus, as its conservator, the FDIC "stepped into the shoes" of Superior Federal, as it likewise did as receiver of Superior, and was not acting as the United States.

## III. Conclusion

Based on the foregoing, the Court finds that the FDIC in the instant case–acting in its capacity either as receiver of Superior or conservator of Superior Federal–is not the United States. Plaintiff's claim is, therefore, actually one between two non-governmental parties and falls outside the Tucker Act. Accordingly, the Court GRANTS Defendant's motion to dismiss and directs the Clerk to dismiss Plaintiff's complaint with prejudice.

s/Edward J. Damich
EDWARD J. DAMICH
Chief Judge

---

12 U.S.C. § 1821(d)(2)(B)(i)-(iv). Moreover, the statute provides that the FDIC, in its capacity either as receiver or conservator, "shall not be subject to the direction or supervision of any other agency or department of the United States or any State in the exercise of the Corporation's rights, powers, and privileges." 12 U.S.C. § 1821(c)(2)(C) (2000).

[10] On the one hand, the FDIC as conservator may take such action as may be "(i) necessary to put the insured depository institution in a sound and solvent condition; and (ii) appropriate to carry on the business of the institution and preserve and conserve the assets and property of the institution." 12 U.S.C. § 1821(d)(2)(D) (2000). On the other hand, the FDIC as receiver is given the authority to "place the insured depository institution in liquidation and proceed to realize upon the assets of the institution, having due regard to the conditions of credit in the locality." 12 U.S.C. § 1821(d)(2)(E) (2000).